UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JEFFERY ALLEN HAMILTON,

    Plaintiff,

v.

PETER TEAGUE; WALMART, Albany, Oregon; MICHELLE DUNCAN,

    Defendants.

Case No. 6:24-cv-00567-AA

**OPINION AND ORDER**

AIKEN, District Judge.

    Plaintiff, a self-represented adult in custody (AIC), filed this action pursuant to 42 U.S.C. § 1983 and alleged a claim of excessive force arising from his arrest by Defendant Teague, an officer with the Albany Police Department. Officer Teague now moves for summary judgment on grounds that the record fails to establish a violation of Plaintiff's constitutional rights. Upon review of the record, I find that disputed issues of material fact preclude summary judgment, and Officer Teague's motion is DENIED.

1 - OPINION AND ORDER

## BACKGROUND

On April 14, 2022, Plaintiff went to a Walmart store in Albany, Oregon to shop for food. Pl.'s Depo. at 28 (attachment to Murphy Decl.) (ECF no. 52-1). While he was shopping, a loss prevention officer accused Plaintiff and a companion of stealing items and asked them to leave the premises. *Id.* at 31-32. As Plaintiff left the store and began walking away, he observed several police officers, including Officer Teague, drive into the Walmart parking lot. *Id.* at 35-37.

Officer Teague exited his patrol vehicle and called out "Stop!" as Plaintiff walked out of the parking lot. Teague Decl. Ex. A at :35 (bodycam video recording) (ECF Nos. 51, 54). Plaintiff ignored Officer Teague's command and, after taking a few steps, began running. *Id.* Ex. A at :38-41. Officer Teague took chase while shouting "stop, stop right now" as Plaintiff ran across the street. *Id.* Ex. A at :41-46. Plaintiff continued running down the block and Officer Teague shouted "Stop! Police! You're under arrest!" *Id.* Ex. A at :46-50. Plaintiff then turned down a wide, residential alley, stopped running, and turned around. *Id.* Ex. A at :54-55. Petitioner had a cigarette in his mouth and was holding a lighter in his left hand. *Id.* Ex. A at :55.

Officer Teague ran toward Plaintiff, and he contends that Plaintiff balled his fists and struck or attempted to strike him. Teague Decl. ¶¶ 17-18. Plaintiff disputes this assertion and maintains that he stepped back and tried to avoid being tackled. Pl.'s Resp. at 5-6; Pl.'s Depo. at 47-49. In any case, Officer Teague ran up to Plaintiff and yelled, "stop right now, get on the ground" as he took Plaintiff to the ground. Teague Decl. Ex. A at :56-57. Plaintiff exclaimed, "Hey dude, what the fuck? I didn't do nothing wrong" as he fell down. *Id.* Ex. A at :58-1:02. As Plaintiff sat or lay on the ground, Officer Teague commanded, "Get on the ground! Put your hands behind your back" as he gripped Plaintiff's upper left arm. *Id.* Ex. A at 1:01-03. Officer

2 - OPINION AND ORDER

Teague contends that because Plaintiff was struggling and resisting arrest, he struck Plaintiff with a closed fist several times to gain compliance. *Id.* ¶¶ 24-26, 30; *see also id.* Ex. A. at 1:03-07. Plaintiff disputes that he was resisting arrest and maintains that his arm was trapped under his body. Eventually, Plaintiff was face down on his stomach with one hand behind his back, and Officer Teague removed the lighter from Plaintiff's hand and placed him in handcuffs. *Id.* Ex. A at 1:15-22.

Paramedics were called to the scene and Officer Teague eventually took Plaintiff to Samaritan Albany General Hospital. *Id.* ¶ 34. Plaintiff was diagnosed with "contusion of face, initial encounter; acute pain of left shoulder; acute pain of right knee." *Id.* ¶ 36. Imaging revealed no acute physical injuries and Plaintiff was lodged at the Linn County Jail. *Id.* ¶ 35.

Plaintiff was charged with several offenses, including Robbery in the Third Degree, Escape in the Third Degree, Resisting Arrest, and Assaulting a Public Safety Officer. The charges were eventually dismissed.

## DISCUSSION

Officer Teague moves for summary judgment on grounds that Plaintiff cannot succeed on the merits of his claim and, alternatively, that Officer Teague is entitled to qualified immunity. To prevail, Officer Teague must show that "there is no genuine dispute as to any material fact" and he is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the moving party, Officer Teague bears the burden of establishing the absence of any genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the burden shifts to Plaintiff to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id*.

3 - OPINION AND ORDER

The Court must "draw all reasonable inferences" in favor of Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and quotation marks omitted).

Plaintiff alleges a claim of excessive force against Officer Teague.[1] Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir. 2001). "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007). "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Officer Teague does not dispute that he tackled Plaintiff and struck him numerous times while Plaintiff was on the ground. This use of force, although not deadly, was "significant" and objectively reasonable only if compelled by a strong governmental interest. *McCrae v. Larned*, No. 6:20-cv-2180-MK, 2022 WL 4451844, at *7-8 (D. Or. July 14, 2022), *report and recommendation adopted*, 2022 WL 4447486 (D. Or. Sept. 23, 2022).

---

[1] Plaintiff's claims against Walmart and the Linn County Sheriff were previously dismissed for failure to state a claim.

**4 - OPINION AND ORDER**

When evaluating the government's interest in using force, the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court may also consider whether the officer issued a warning before the force was used. *Bryan v. MacPherson*, 630 F.3d 805, 831 (9th Cir. 2010) (noting that "police officers normally provide such warnings where feasible, even when the force is less than deadly, and that the failure to give such a warning is a factor to consider"). Ultimately, the issue is whether the totality of the circumstances justified the degree of force used. *County of Los Angeles v. Mendez*, 581 U.S. 427-28 (2017); *Graham*, 490 U.S. at 397.

Here, the crime at issue was not severe; at most, Plaintiff was suspected of shoplifting and told to leave Walmart's premises, which he did. While the record reflects that Plaintiff ran away from Officer Teague when repeatedly told to "stop," the record is devoid of facts to suggest that Plaintiff committed a serious crime or posed an immediate danger to the community. Plaintiff further contends that he was not attempting to evade arrest, as he had no obligation to stop before Officer Teague said he was "under arrest," and he complied with that order "within a few seconds." Pl.'s Response at 2; Pl.'s Depo. at 39; *see also State v. Davis*, 360 Or. 201, 210 (2016) (stating that an "order to stop is not necessarily equivalent to placing a person under arrest").

The parties dispute whether Plaintiff posed a risk to Officer Teague's safety and whether he was resisting arrest. Officer Teague asserts that after Plaintiff stopped running, he balled his hands into fists, swung his left fist upward, and hit Officer Teague in the face. Teague Decl. ¶¶ 14, 17-18. Officer Teague then tackled Plaintiff to the ground and told Plaintiff to put his hands behind his back. *Id.* ¶¶ 20-23. Officer Teague maintains that Plaintiff refused to comply and

5 - OPINION AND ORDER

attempted to use his arm to flip himself over, and in response, Officer Teague struck Plaintiff with a closed fist five to six times on his face and body. *Id.* ¶¶ 23-24, 30.

Plaintiff disputes Officer Teague's version of events. Plaintiff claims that, as Officer Teague ran toward him, he had a lighter in one hand with a cigarette in his mouth, and he was attempting to light his cigarette. Pl.'s Depo. at 40. Plaintiff maintains that Officer Teague did not slow down and gave no warning before tackling him, such as telling Plaintiff to place his hands in the air or to "get on the ground." Pl.'s Response at 3; Pl's Depo. at 40, 50. Instead, Plaintiff contends that Officer Teague lowered his head, tackled Plaintiff, and began punching him repeatedly. Pl.'s Response at 3 ("He just ran at me and hit me in the face, then taking me to the ground, and then punching me repeatedly in the face."); Pl's Depo. at 40, 42, 44, 52-53. Plaintiff explains that his arms simply moved out to the side as he stepped backward to avoid being tackled, and he did not ball his fists or take a swing at Officer Teague. Pl.'s Response at 3; Pl.'s Depo. at 51-52. Pl.'s Resp. at 5-6; Pl.'s Depo. at 47-49. Plaintiff also asserts that he did not resist arrest. Instead, Plaintiff claims that his arm was trapped under his body and he was attempting to free his arm and place it behind his back. Pl.'s Depo. at 44, 55-57.

The video recording taken from Officer Teague's bodycam does not conclusively support either party's version of the facts. The recording reflects that, once he stopped running, Plaintiff turned around and raised his right hand and took the cigarette from his mouth. Teague Decl. Ex. A. at :54-55. Plaintiff's hands were at his side as Officer Teague continued to run towards Plaintiff while saying, "Stop right now!" *Id.* Ex. A at :55-56. Plaintiff's arms appeared to swing upward as he stepped back, and Officer Teague continued running and tackled Plaintiff while commanding, "Get on the ground!" *Id.* Ex. A at :56-57. While Officer Teague instructed Plaintiff to "get on the ground," he arguably did so as he tackled Plaintiff and it is questionable whether

6 - OPINION AND ORDER

his command gave Plaintiff adequate warning that he intended to use force. Once Officer Teague reached Plaintiff, the camera was directed at the ground and Plaintiff and Officer Teague are not clearly visible on the recording, and it is unclear whether Plaintiff attempted to strike the officer. *Id.* Ex. A at :56-1:00.²

After tackling Plaintiff, Officer Teague said, "On the ground!" and "Hands behind your back!" and struck Plaintiff several times as Plaintiff cried out, "Quit fucking punching me!" *Id.* at 1:01-07. During this time, the recording shows glimpses of Plaintiff's body or the ground, and it is unclear whether Plaintiff was resisting arrest or attempting to free his arm and place it behind his back. On this record, the underlying facts of Plaintiff's arrest, including whether he struck Officer Teague or resisted arrest. remain in dispute.

Ultimately, the reasonableness of Officer Teague's use of force boils down to a determination of credibility, and this Court cannot assess the parties' credibility on summary judgment. *Anderson*, 477 U.S. at 255 (stating that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Accordingly, genuine issues of material fact preclude this Court from finding, as a matter of law, that Officer Teague's use of force was objectively reasonable under the circumstances.

Alternatively, Officer Teague contends that he is entitled to qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 580 U.S. 73, 78-79 (2017) (per curiam) (citation and quotation marks omitted); *Ballentine*

---

² Officer Teague submitted a still photo from the bodycam recording that purports to show Plaintiff in a "fighting stance." Teague Decl. ¶¶ 14, 15 & Ex. B. When viewed in the context of the entire recording and with inferences construed in Plaintiff's favor, this photograph does not conclusively establish that Plaintiff struck or attempted to strike Officer Teague.

**7 - OPINION AND ORDER**

*v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) ("A government officer is nevertheless entitled to qualified immunity if the plaintiff's rights were not clearly established at the time of the alleged misconduct."). However, "a district court should decide the issue of qualified immunity as a matter of law when the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts." *Conner v. Heiman*, 672 F.3d 1126, 1131 (9th Cir. 2012) (internal quotation marks and citation omitted). When "historical facts material to the qualified immunity determination are in dispute," the claim should be decided by a jury. *Id.*

As explained above, Plaintiff disputes Officer Teague's assertion that he attempted to hit Officer Teague or resisted arrest, and the video evidence does not conclusively support Officer Teague's version of events. Construing the disputed facts and all inferences in Plaintiff's favor, it was clearly established "that gang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect" and "punching [the suspect] to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed" were Fourth Amendment violations. *Blankenhorn*, 485 F.3d at 481.

Accordingly, because the "historical facts" critical to determining qualified immunity are in dispute, summary judgment is not appropriate. *Conner*, 672 F.3d at 1131; *see also Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."); *Grant v. Multnomah Cnty. Jail*, Case No. 3:24-CV-00772-SB, 2025 WL 2802253, at *10 (D. Or. Sept. 30, 2025) ("The Court finds that the issue of qualified immunity is premature because it will depend on the jury's resolution of disputed facts.").

**8 - OPINION AND ORDER**

**CONCLUSION**

Officer Teague's Motion for Summary Judgment (ECF No. 50) is DENIED. Within thirty days from the date of this Order, the parties shall confer and provide a status report informing the Court whether they wish to participate in a judicial settlement conference or proceed to trial. Upon receipt of the status report, the Court will appoint counsel for Plaintiff.

IT IS SO ORDERED.

DATED this  17th  day of February, 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge

**9 - OPINION AND ORDER**